**Opinion issued March 7, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-22-00611-CV**

————————————

**SHAWN FRY, Appellant**

**V.**

**SHANII FRY, Appellee**

---

**On Appeal from the 387th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 18-DCV-255052**

---

**MEMORANDUM OPINION**

A few years after Shawn and Shanii Fry divorced, the trial court rendered an order that purported to clarify and implement the agreed property division in their final divorce decree. On appeal, Shawn contends the trial court abused its discretion by modifying the property division in the clarification order and giving the

clarification order a retroactive effect prohibited by the Family Code.[1] Because we conclude that the trial court did not abuse its discretion in either respect, we affirm.

## Background

Shawn and Shanii Fry divorced in 2018, after more than 15 years of marriage. The agreed divorce decree contained several provisions related to a "privately held compan[y]"—Axcension, Inc.—that employed both Shawn and Shanii. In dividing the parties' estate, the decree awarded "any and all ownership interest" in Axcension to Shawn as his separate property, along with:

- the "intellectual property created by Shawn . . . used in connection with the ownership of" Axcension, and

- beginning November 1, 2018, "any and all sums of cash" in two bank accounts in Axcension's name.

The two bank accounts were included in a list of accounts described in the decree as giving Shawn the "sole right to withdraw funds" or "subject to [his] sole control[.]"[2]

As for Shanii and Axcension, the decree stated that she would:

receive a sum of $3,000.00 twice a month from Axcension, Inc. directed by [Shawn] in his control as salary, in accordance with payroll directives of Axcension, Inc starting on November 1, 2018 until November 1, 2022. Shawn . . . will be personally liable for an unpaid amount in the event that Axcension is unable to fulfill the total amount

---

[1]  Shanii did not file a brief or otherwise respond to Shawn's contentions on appeal.

[2]  The decree also awarded Shawn an account in the name of Axcension Billing Solutions as his separate property. The record does not reveal the relationship, if any, between Axcension and Axcension Billing Solutions.

of any payment and will guarantee that payment will be sent no later than 14 days.

Related to this payment, in the section addressing Shawn's debts and obligations, the decree instructed that Shawn "shall pay, as part of the division of the estate of the parties," "any unpaid amount of payments that Axcension, Inc. is liable to [Shanii] per directive of $3,000.00 twice a month from November 1, 2018 until November 1, 2022 as salary."

Three years after the divorce, Shanii petitioned for clarification and enforcement of Shawn's Axcension-related obligations under the divorce decree. She alleged that she had not received any payments from Axcension or Shawn for more than a year and that Shawn was personally liable for the past-due amounts. She also asked for clarification of the decree if the trial court found the decree was "not specific enough to be enforced by contempt."

At the hearing on Shanii's petition, Shanii argued that the divorce decree's property division had awarded her the Axcension payments instead of a percentage of any ownership in the business. The trial court admitted into evidence Shanii's bank records showing that she initially received payments from Axcension twice a month, but the payments stopped after December 31, 2019. Shanii testified that neither Axcension nor Shawn had made any payments from January 2020 onward and that the missed payments added up to $75,000.

At the close of Shanii's evidence, Shawn moved for an instructed verdict. He argued that the divorce decree obligated Axcension—not him—to pay Shanii. But that obligation was not enforceable because Axcension was not a party to the divorce proceeding and thus was a stranger to the decree. And because Axcension was not liable under the decree, neither was he. According to Shawn, any obligation on his part turned on Axcension's liability.

After considering the parties' arguments, the trial court stated on the record:

> So I am going to grant the directed verdict because the enforcement order does say that it's Axcension who is ordered to pay. I believe the language is not clear. What I am going to do though – and you guys aren't going to like me for this because I want to think. I need to decide if there is a way to fix it to clarify the order because you did ask it to be clarified. If there is a way to clarify the order without changing the substance of the order which I am not allowed to do.
>
> . . .
>
> I think the decree was poorly written. That part of the decree was poorly written. So I'm going to – I'm going to grant the instructed verdict.

Before the trial court issued any written order, however, it held a second hearing. Shawn reasserted his contention that any clarification that made him responsible for the missed payments to Shanii would impermissibly alter the divorce decree's property division. Shanii responded that Shawn could direct the payments because the decree awarded him ownership of Axcension and established his personal liability for any missed payments.

4

The trial court later signed a clarification order. The order recites the trial court's finding that "certain terms of the [divorce] decree" were not specific enough to enforce by contempt and thus must be modified. The trial court ordered two clarifications. First, it ordered that:

> [Shanii] shall receive a sum of $3000.00 on the first and fifteenth days of each month from Axcension, Inc. as directed by [Shawn] in his control as salary beginning on November 1, 2018 and continuing each month with the last payment due on November 15, 2022 and it is so ORDERED. IT IS FURTHER ORDERED that Shawn . . . shall be personally liable for any unpaid amounts in the event that Axcension is unable or has not paid the total amount of any payment due on the 1st or the 15th days of each month and will guarantee that payment will be sent no later than 14 days after the payment is due.

> Second, it ordered that Shawn's debt included: "[a]ny unpaid amount of payments in #9 above that Axcension, Inc. is liable to pay to [Shanii] per the directive of $3000 due on the first and fifteenth day of each month from November 1, 2018 until November 15, 2022 as salary."[3]

Finally, the clarification order stated that the trial court would not hold Shawn in contempt per its instructed verdict, but it ordered him to pay $75,000 to Shanii for the "unpaid sums through and including the payment due January 1, 2021."

---

[3] The "#9" is an apparent reference to the provision requiring payments from Axcension to Shanii in the divorce decree, as it is the ninth paragraph in that part of the divorce decree awarding Shanii certain property.

## The Clarification Order

Shawn contends the trial court's clarification order is an improper modification of the divorce decree property division that has a prohibited retroactive effect. We disagree.

### A. Standard of review and applicable law

Courts interpret divorce decree language as we do other judgments. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009). We construe the decree as a whole to harmonize and give effect to the entire decree. *Id.* If the decree is unambiguous, we must adhere to its literal language. *Id.* But if the decree is ambiguous, we interpret it by reviewing both the decree as a whole and the record. *Id.* Whether a divorce decree is ambiguous is a question of law. *Id.* at 901–02.

"As with other final, unappealed judgments which are regular on their face, divorce decrees and judgments are not vulnerable to collateral attack." *Id.* at 902. But the Family Code authorizes a trial court that renders a divorce decree to enter orders to enforce or specify more precisely the decree's property division. *See* TEX. FAM. CODE § 9.006(a) ("[T]he court may render further orders to enforce the division of property made or approved in the decree . . . to assist in the implementation of or to clarify the prior order" and "may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed."); *Hagen*, 282 S.W.3d at 902. If the trial court

6

finds that the original form of the property division is not specific enough to be enforceable by contempt, it "may render a clarifying order setting forth specific terms to enforce compliance with the original division of property." TEX. FAM. CODE § 9.008. But the trial court may not "amend, modify, or change the division of property" originally set out in the decree. *Id.* § 9.007(a). "Attempting to obtain an order that alters or modifies a divorce decree's property division is an impermissible collateral attack." *Hagen*, 282 S.W.3d at 902.

We review the trial court's order clarifying the divorce decree for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). A trial court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding rules or principles, or it erroneously exercises its power by making a choice outside the range of choices permitted by law. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Green v. Green*, No. 01-20-00663-CV, 2022 WL 3031346, at *4 (Tex. App.—Houston [1st Dist.] Aug. 2, 2022, no pet.) (mem. op.).

## B. The clarification does not modify the property division

Shawn contends that the clarification order impermissibly modified the divorce decree's property division and attendant obligations by making him directly liable for the semimonthly payments to Shanii. Relying on the decree language

7

instructing that Shanii "will receive a sum of $3,000 twice a month *from* Axcension" and ordering him to pay "any unpaid amount of payments that Axension [] is *liable* to Shanii," Shawn asserts that his obligation to pay Shanii under the decree turned on Axcension's liability. (Emphasis added.) He argues that Axcension could not be compelled to make payments under the decree because it was not a party to the divorce proceeding, and there was no proof or claim that Axcension had any agreement or other obligation itself to pay Shanii a salary as called for in the decree. Thus, Axcension was not liable to Shanii for any missed payments. And if Axcension was not liable to Shanii for the missed payments, then neither was Shawn. According to Shawn, the trial court's clarification order "overlooks this required liability of Axcension to Shanii as the premise" for his liability and "simply imposes direct liability on [him] regardless [of] whether Axcension would have been liable to Shanii." We disagree.

Shawn's interpretation making him a mere guarantor of Axcension's liability ignores the decree's other provisions awarding him ownership of Axcension and the money in its accounts. *See Hagen*, 282 S.W.3d at 901 (divorce decree must be construed as a whole). The decree recognizes the effect of Shawn's ownership of Axcension in its provision for the semimonthly payments to Shanii by stating that she will receive those payments from Axcension "*directed* by [Shawn] in *his control* as salary." (Emphasis added.) Whether the decree is enforceable against Axcension

8

itself as a non-party is of no consequence. Considered as a whole, the decree can only be construed one way—as imposing on Shawn the obligation to direct the salary payments from Axcension to Shanii as part of the property division and, if he did not, making him personally responsible for the unpaid amounts. *Cf. Green*, 2022 WL 3031346, at *4 ("A decree is unambiguous where it can be given a certain or definite legal meaning or interpretation."). Because the divorce decree was unambiguous in this regard, we conclude the trial court's order was a proper clarification of, and not an impermissible modification of, the decree.[4] *See* TEX. FAM. CODE § 9.006(a). And we hold the trial court did not abuse its discretion by entering the clarification order.

## C.     The clarification order does not have an impermissible retroactive effect

Shawn also argues that the clarification order's requirement that he pay Shanii the past-due amount had a retroactive effect prohibited by Section 9.008(c) of the Family Code. While Section 9.008(c) states that "[t]he court may not give retroactive effect to a clarifying order," Shawn's attempt to avoid paying the past-due amounts is not what that section guards against. *See* TEX. FAM. CODE § 9.008(c); *Zeolla v. Zeolla*, 15 S.W.3d 239, 242–43 (Tex. App.—Houston [14th Dist.] 2000, pet.

---

[4]     Because we hold that the decree is unambiguous, we do not reach Shawn's complaint that the trial court failed to obtain extrinsic evidence of the parties' intent. *See Reiss v. Reiss,* 118 S.W.3d 439, 441–42 (Tex. 2003) (observing that when decree is plain and unambiguous, there is no room left for interpretation, and the effect of the decree is a question of law for the court to decide considering the literal meaning of the language used); *cf. In re R.F.G.*, 282 S.W.3d 722, 728 (Tex. App.—Dallas 2009, no pet.) (trial court erred in looking to other, extrinsic evidence to determine parties' intended definition of a plain, unambiguous term).

denied) (holding trial court did not give clarification order retroactive effect when it ordered payment of benefits already accrued under the agreement by the parties). Section 9.008 deals with clarification in aid of contempt enforcement, and all its other subsections specifically speak in terms of contempt. *See* TEX. FAM. CODE § 9.008(a)–(b), (d). Read in this context, Section 9.008(c) prohibits a court from giving retroactive effect to a clarifying order "in such a way as to subject a party immediately to contempt," not from ordering payment of past-due benefits consistent with the divorce decree. *Zeolla*, 15 S.W.3d at 242 (noting that any other interpretation would make court powerless to order payment of past due obligations and would conflict with case law and Family Code); *accord Watret v. Watret*, 623 S.W.3d 555, 563 (Tex. App.—El Paso 2021, no pet.).

Here, the trial court's clarification order was consistent with the payment obligations that had accrued under the divorce decree. *Zeolla*, 15 S.W.3d at 243. The clarification order "attached no new legal consequences to prior events, nor did it impair vested rights." *See id.* Had the trial court allowed Shawn to avoid his already accrued obligations, it would have altered *Shanii's* substantive rights under the decree to receive the payments. We thus conclude that the clarification order does not violate Section 9.008(c). And we hold that the trial court did not abuse its discretion by requiring Shawn to pay Shanii the past-due amount.

10

## Conclusion

We affirm the trial court's clarification order.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.